# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jaclyn A. Alm, | Civil No. 12-49 (DWF/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| DJO, LLC; DJO Incorporated, n/k/a DJO Global, Incorporated; McKinley Medical, LLC; Moog, Inc.; Curlin Medical, Inc.; The Broe Companies, Inc.; Pat Broe; and DJO Global, Inc., | |
| Defendants. | |

---

Elisha N. Hawk, Esq., Janet, Jenner & Suggs, LLC; and Yvonne M. Flaherty, Esq., and Caia V. Johnson, Esq., Lockridge Grindal Nauen PLLP, counsel for Plaintiff.

Bradley J. Lindeman, Esq., Elizabeth Snyder Poeschl, Esq., and Jon R. Russell, Esq., Meagher & Geer, PLLP, counsel for DJO Defendants.

Byeongsook Seo, Esq., Gordon & Rees LLP; and Jonathan P. Norrie, Esq., Bassford Remele, PA, counsel for McKinley Medical LLC and Broe Defendants.

Corey Lee Gordon, Esq., Brendan M. Kenny, Esq., Emily A. Babcock, Esq., and Jerry W. Blackwell, Esq., Blackwell Burke PA, counsel for Moog Inc. and Curlin Medical, Inc.

---

## INTRODUCTION

This matter is before the Court on Broe Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), or, in the Alternative, Motion to Stay (Doc. No. 65). For the

reasons set forth below, the Court grants in part and denies in part Broe Defendants' motion.

## BACKGROUND

Plaintiff Jaclyn Alm ("Plaintiff") alleges, in a Complaint filed on January 6, 2012, that she was injured by a defective pain pump, inserted into her left shoulder joint following arthroscopic surgery in November of 2006. (Doc. No. 1, Compl. ¶ 32.) Plaintiff asserts claims against all Defendants[1] sounding in negligence, fraud, strict products liability, and breach of express and implied warranties. (*Id.* ¶¶ 80-171.)

On September 18, 2012, DJO, LLC filed an Amended Answer to Plaintiff's Complaint and Cross-Claim against Moog, Curlin, and the Broe Defendants. (Doc. No. 47.) DJO asserts the following two counts against Moog, Curlin, and the Broe Defendants: (1) common law indemnity; and (2) contribution. (*Id.* ¶¶ 220-26.) DJO's cross-claims arise out of a Distribution Agreement between McKinley and DJO, effective October 1, 2003, pursuant to which DJO agreed to distribute pain pumps manufactured by McKinley. (*Id.* ¶ 209.) The Distribution Agreement governed the parties' relationship

---

[1] Defendants DJO, LLC and DJO, Incorporated, now known as DJO Global, Incorporated (collectively, "DJO") engage in the marketing, distributing, promoting, and selling of infusion pain pumps. (Compl. ¶ 19.) Defendant McKinley Medical, LLC ("McKinley"), Defendant Curlin Medical, Inc. ("Curlin"), and Defendant Moog, Inc. ("Moog") engage in the testing, manufacturing, labeling, marketing, distributing, promoting, and selling of pain pumps. (*Id.* ¶¶ 21-23.) Curlin acquired McKinley's pain pump business in August of 2006. (*Id.* ¶ 23.) Also in 2006, Moog purchased McKinley and Curlin. (*See id.* ¶ 22.) Defendant The Broe Companies, Inc. (managed by Pat Broe) was the parent company of McKinley, and no longer exists as an active business. (*Id.* ¶ 29.) The Court refers to McKinley, The Broe Companies, Inc., and Pat Broe, collectively, as the "Broe Defendants."

2

with respect to the sale of specific pain pump products. (Doc. No. 68, Ex. A ("Distribution Agreement").) The Distribution Agreement provides, in part:

> Each of the parties hereto shall be responsible for its own acts or omissions or alleged acts or omissions (and in the case of DJO, for the acts or omissions of its SubDistributors) and each of the parties shall protect, indemnify, defend and hold harmless the other party and any affiliate or the other party from and against any and all claims, losses, demands and liabilities, including attorneys' fees and court costs, which may arise therefrom. However, in no event shall McKinley be liable to DJO or any third party for any lost profits or any other incidental or consequential damages of any kind.

(*Id.* § 13.02.)

The Distribution Agreement further provides:

> In the event of any dispute, claim or controversy (a "Claim") arising out of or relating to this Agreement or the purchase of Products hereunder, the parties agree to make a good faith attempt to negotiate an amicable resolution to any and all such Claims. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, not resolved by the parties within thirty (30) days after delivery of written notice thereof from a party to the other parties involved with such dispute, shall be settled by arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1, et seq., in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .
> The decision of the arbitrator(s) shall be final and binding upon the parties and judgment upon the award may be entered in any court having jurisdiction thereof. The arbitration shall take place in Denver, Colorado and the expenses of the arbitrator(s) shall be split equally between the parties. DJO acknowledges that this Agreement concerning arbitration and in particular the place of arbitration is an essential part of this Agreement and upon which McKinley has substantially relied in entering this Agreement . . . .

(*Id.* § 15.02.)

In August of 2006, Moog purchased McKinley and Curlin. (Doc. No. 47 ¶ 211.) DJO continued its distribution arrangement with McKinley's successor corporation

Curlin, and allegedly entered into a similar distribution agreement with Curlin and Moog in March 2007. (*Id.* ¶ 212.) DJO alleges that, pursuant to the distribution agreements, Moog, Curlin, and McKinley agreed to manufacture pain pumps free from defects and fit for use. (*Id.* ¶ 214.) DJO asserts that the distribution agreement between DJO, Moog, and Curlin provides that "Curlin shall indemnify and defend DJO from any and all claims which may arise from the sale of the pain pumps manufactured by Curlin." (*Id.* ¶ 212.) DJO further alleges that, as the manufacturers of the pain pump used in Plaintiff's surgery, Moog, Curlin, and McKinley are independently liable to Plaintiff for her injuries and damages if the pain pump, in fact, caused her injuries. (*Id.* ¶ 215.)

## DISCUSSION

### I. Legal Standard

Broe Defendants bring this motion pursuant to the Federal Arbitration Act ("FAA"). The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Broe Defendants asks that the Court dismiss or stay the proceedings because the present dispute is governed by a written arbitration agreement. In determining whether to compel arbitration, the Court must determine: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). There is a strong presumption in favor of arbitration and any doubts concerning arbitration rights should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

4

**II.    Broe Defendants' Motion**

The Court first addresses the issue of whether a valid agreement to arbitrate exists. There appears to be no dispute that a valid arbitration agreement exists pursuant to the Distribution Agreement executed by DJO and McKinley.[2] (Distribution Agreement § 15.02.) The Court concludes that DJO and McKinley entered into a valid agreement to arbitrate and thereby agreed to submit to arbitration "[a]ny controversy or claim arising out of or relating to" the Distribution Agreement.

The Court next considers whether the present dispute is within the scope of the arbitration agreement. DJO maintains that, because it seeks common law contribution and indemnity in this case rather than contractual indemnification pursuant to the Distribution Agreement, the arbitration clause within the Distribution Agreement does not apply. It is clear to the Court, however, that the dispute here arises out of the manufacture, distribution, and sale of pain pump products. (*See generally* Compl.) In this case, Plaintiff's claims against all Defendants stem from the manufacture, distribution and sale of an allegedly defective pain pump product. In light of these claims, DJO seeks indemnity and contribution from McKinley and McKinley's parent company, controlling shareholder, and successors in interest. (Doc. No. 47 ¶¶ 209-11.)

---

[2] The Distribution Agreement, as executed by "DJ Orthopedics, LLC," was entered into by DJ Orthopedics, LLC as well as "its affiliates and subsidiaries," collectively known as "DJO," and thereby bound all DJO entities to the terms of the Distribution Agreement. (*See* Distribution Agreement at 1.)

5

Now, McKinley, as a signatory to the agreement, along with Broe Companies, Inc. and Pat Broe, as non-signatories to the Distribution Agreement, but rather as parent company and controlling shareholder of McKinley, seek to enforce the arbitration clause against DJO. (Doc. No. 72 at 2-3.) The Court finds that the dispute here arises out of and relates directly to the contractual agreement between the signatories of the Distribution Agreement to sell and distribute pain pump devices. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005). The Distribution Agreement itself contains several provisions regarding warranties, product complaints, recalls, compliance with law, and, of course, indemnification. (Distribution Agreement ¶¶ 10.01-13.02.) In particular, McKinley warranted that products to be sold to DJO for distribution were "free from defects" and were fit for "ordinary use." (*Id.* ¶ 10.01.) Thus, the product liability claims at issue in this lawsuit (even if the cross-claims are grounded in common law as opposed to contractual indemnity) necessarily implicate other provisions of the contract. *Contra In re Wholesale Grocery Prods. Antitrust Litig.*, ---F.3d---, 2013 WL 514758 at *4-5 (8th Cir. Feb. 13, 2013) (noting that antitrust claims in that case did not "involve violation of the terms of the contract" at issue and remanding on successor-in-interest argument).

Accordingly, the Court concludes that DJO's cross-claims "arise out of or relate to" the Distribution Agreement and thus fall within the scope of the arbitration clause.

The cross-claims are therefore subject to arbitration. As such, the Court compels arbitration of DJO's cross-claims.[3]

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Broe Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), or, in the Alternative, Motion to Stay (Doc. No. [65]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. To the extent Broe Defendants seek to compel arbitration of the cross-claims against them, the motion is **GRANTED**.

    b. To the extent Broe Defendants seek dismissal for lack of subject matter jurisdiction, the motion is **DENIED**.

2. DJO's cross-claims against Broe Defendants are subject to arbitration.

3. All Broe Defendants shall participate in the arbitration process.

4. The cross-claims are **STAYED** pending the outcome of arbitration.

5. The Court expressly retains jurisdiction over this case.

---

[3] Notably, DJO does not appear to oppose arbitration and a stay of the cross-claims provided that each Broe Defendant be bound by the terms of the Distribution Agreement and each Broe Defendant attend and participate in arbitration. (Doc. No. 71 at 2.) While the Court orders the Broe Defendants to participate in arbitration, it declines to make an affirmative ruling regarding specifically which Broe Defendant entities, other than McKinley, are "bound" by the Distribution Agreement at this time.

6. This order shall have no effect on Plaintiff's claims in this matter, which shall proceed before this Court.[4]

Dated: March 8, 2013         s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge

---

[4] It appears from the record that Plaintiff has resolved its claims against McKinley Medical, LLC, Pat Broe, and The Broe Companies, Inc., but that Plaintiff intends to pursue its claims against DJO, LLC and DJO Global, Inc. (Doc. No. 54; *see also* Doc. No. 17.) As of the date of this Order, however, no settlement agreement or dismissal papers have been filed.